**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**KATHY G. ARICH**                                                                                                     **PLAINTIFF**

**v.**                                                                                                       **Cause No. 3:11-cv-538-CWR-LRA**

**THE DOLAN COMPANY d/b/a DOLAN**
**MEDIA COMPANY d/b/a MISSISSIPPI**
**BUSINESS JOURNAL; DOLAN MEDIA**
**HOLDING COMPANY d/b/a MISSISSIPPI**
**BUSINESS JOURNAL; N.O.P.G., LLC d/b/a**
**MISSISSIPPI BUSINESS JOURNAL; ED**
**DARLING, IN HIS OFFICIAL AND**
**PERSONAL CAPACITIES; JOHN DOES 1-15**                 **DEFENDANTS**

**<u>AMENDED ORDER</u>**

On its own motion, the Court hereby withdraws its prior Order in this case, Docket No. 67, 2012 WL 1229151, and substitutes the following:

Pending before the Court are two motions to dismiss, or in the alternative for summary judgment, filed by defendants The Dolan Company; Dolan Media Holding Company; N.O.P.G., LLC; and Ed Darling. Docket Nos. 14-15; 19-20. The plaintiff has responded in opposition, Docket Nos. 26-33, the defendants have replied, Docket Nos. 37-38, and the matter is ready for review. The Title VII claims against Ed Darling will be dismissed. All other relief will be denied.

*I.*    *Factual and Procedural History*

In 2008, Kathy G. Arich was the advertising director for the Mississippi Business Journal, where she had been employed since 2001.[1] Docket No. 1, at 3. She reported directly to the publisher. Docket No. 8, at 7.

In July 2008, Ed Darling was hired as the publisher. Docket No. 1, at 4. Later that year, female employees alleged that Darling had engaged in sexual harassment; some of them notified Arich. *Id.* During an internal investigation, Arich communicated their complaints to the investigator. *Id.*

In February 2009, Arich "received a written warning for her intimidating management style

---

[1] The Dolan Company; Dolan Media Holding Company; and N.O.P.G., LLC were all sued "d/b/a Mississippi Business Journal." Docket No. 1, at 1-2. Arich was technically employed by N.O.P.G., LLC. Docket No. 8, at 7.

and rude and condescending behavior." *Id.* In May, Darling allegedly "exhibited intimidating and threatening conduct" in a meeting with female employees, but an attendee's complaint was allegedly not investigated. *Id.* Arich was terminated in September. *Id.* at 5. She filed a charge of discrimination with the EEOC on October 27. Docket No. 14-1. Four days later, Darling retired. Docket No. 16, at 2.

On June 9, 2011, the EEOC issued Arich a Notice of Right to Sue in which it found reasonable cause to believe that violations of Title VII had occurred. Docket No. 1-2. Specifically, its investigation concluded that "Respondent's Publisher subjected [Arich] to a sexually offensive, intimidating and hostile work environment. . . . Further, Respondent's asserted reason for discharging [Arich] fails to withstand scrutiny." Docket No. 26-1, at 4.

Arich filed suit in this Court on August 22, 2011. Docket No. 1, at 1. She alleged that the defendants violated Title VII by engaging in sexual harassment, creating and permitting a hostile work environment, and retaliating against her for engaging in protected activity. *Id.* at 5. She also brought state law claims of defamation and intentional infliction of emotional distress. *Id.* at 6.

Two motions are pending before the Court. Each will be summarized in turn.

*A.   The Corporate Defendants*

The first motion to dismiss, or in the alternative for summary judgment, is brought by The Dolan Company; Dolan Media Holding Company; and N.O.P.G., LLC (together, the "Corporate Defendants"). Docket No. 14.[2] They first argue that Arich's sex discrimination allegation was not presented to the EEOC because "Arich selected the 'retaliation' box on her EEOC charge, and did not select 'gender.'" *Id.* at 3. Next, the Corporate Defendants contend that her state law claims are time-barred by Mississippi's one year statute of limitations. *Id.* at 2. Finally, they argue that Arich's intentional infliction of emotional distress claim fails to allege sufficiently serious facts. Docket No. 16, at 7. The Corporate Defendants do not seek dismissal or judgment on the Title VII retaliation claim.

Arich responds that dismissal or judgment on her state law claims would be premature because discovery is ongoing. Docket No. 26, at 5.[3] She invokes the provision in Rule 56 that

---

[2] Docket Nos. 14 (moving for dismissal) and 19 (moving for summary judgment) are identical.

[3] Docket Nos. 26-33 are identical.

2

allows a party defending against summary judgment to receive more time to gather and evaluate discovery, and attaches the affidavit required by the Rule. *Id.*; *see* Fed. R. Civ. P. 56(d).[4] Specifically, Arich asserts that "considering the outstanding discovery issues and the nature of what evidence exists, a determination as to whether genuine issues of material fact exist cannot properly be made at this time." Docket No. 26, at 5. Moreover, "[d]efendants' Motion to Dismiss is wholly premature, absent the completion of meaningful discovery." *Id.* As for her sex discrimination claim, she argues that it is properly exhausted because her EEOC charge of discrimination "expressly alleged sexual harassment." *Id.* at 7. She contends that under applicable caselaw, she did not have to "check the correct box" as long as the body of her charge alleged sex discrimination, which it did. *Id.* at 7-9. Arich has submitted an affidavit stating that she checked the "Retaliation" box because she "was instructed by EEOC personnel to check the box which best reflected the reason I was fired." Docket No. 26-1.

The Corporate Defendants reply that Arich "alleges no facts supporting an argument that any tortious acts occurred within the year prior to the filing of her Complaint, and her response essentially confirms that she knows of no such acts." Docket No. 38, at 4. They maintain that Arich's EEOC charge is limited to retaliation, in part because "Arich does not even allege any acts of harassment. . . . [T]here are no statements suggesting that she was subjected to a hostile working environment, other than her reference to the alleged October 2008 internal complaint." *Id.* at 3.

   B.   *Ed Darling*

The second motion to dismiss, or in the alternative for summary judgment, is brought by former publisher Ed Darling. Docket No. 15.[5] Darling's challenges to Arich's state law claims are identical to those brought by the Corporate Defendants and need not be recited again. *Id.*; Docket No. 37, at 2-3.

Darling presents a unique argument against Arich's federal claims, though. He contends that those causes of action fail because he is not an "employer" and cannot be sued in his individual capacity under Title VII. *Id.* at 2. Arich's response does not address this argument, Docket No. 26,

---

[4] Although Arich's attorney has mistakenly invoked Rule 56(f), he plainly intended to invoke Rule 56(d). *See* Docket No. 26-2. Rule 56 was re-lettered on December 1, 2010.

[5] Docket Nos. 15 (moving for dismissal) and 20 (moving for summary judgment) are identical.

3

and Darling's rebuttal brief highlights that failure, Docket No. 37, at 1.

## II. Discussion

### A. The State Law Claims - All Defendants

The defendants' arguments as to Arich's state law claims will be reviewed under the motion to dismiss standard.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

Mississippi law provides a one year statute of limitations for claims of defamation and intentional infliction of emotional distress. Miss. Code § 15-1-35 (establishing a one year statute of limitations for defamation); *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (Miss. 2010) (applying a one year statute of limitations to intentional infliction of emotional distress).

Arich's complaint states that the defendants made slanderous and libelous statements after her termination in September 2009 "to the effect that Plaintiff had embezzled, misappropriated and/or mishandled corporate money and was somehow either incompetent or dishonest, or both." Docket No. 1, at 6. It is plausible that a former employer and/or supervisor made defamatory statements about a former employee after the employee's departure. Such defamatory statements may include subsequent letters of (non)recommendation or more informal commentary regarding the employee, published or spoken to former employees, prospective future employers, or others.

4

Under Mississippi law, the only slanderous statements that can support Arich's defamation claim must have been made on or after August 22, 2010. In rare circumstances, *libelous* statements published beyond a year of the filing of an action may be admissible when they were secretive or inherently undiscoverable. *Staheli v. Smith*, 548 So. 2d 1299, 1302-03 (Miss. 1989).

Caselaw supports the defendants' contention that intentional infliction of emotional distress claims are difficult to maintain in employment discrimination cases. "A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Lee v. Golden Triangle Planning & Development Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001). "To justify a finding that this tort has occurred, the defendant's conduct must be wanton and wilful and it would evoke outrage or revulsion." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (quotation marks and citation omitted).

Arich's complaint asserted that there were repeated acts of sexual harassment and intimidation by Darling, a failure by the Corporate Defendants to correct or halt those acts, and several defamatory statements made to multiple audiences. Docket No. 1, at 4-6. It is worth noting that Arich's claim of intentional infliction of emotional distress is not limited to the conduct to which she claims she was subjected while employed at the Mississippi Business Journal. If it were, the claim would be barred by the statute of limitations as that conduct occurred more than a year before she filed her lawsuit. *See Hudson v. Palmer*, 977 So. 2d 369, 380 (Miss. Ct. App. 2007). She alleges that the intentional infliction of emotional distress claim derives from the post-employment malicious and defamatory statements accusing her of criminal conduct and dishonesty. Her intentional infliction of emotional distress claim, therefore, is sufficiently pled. The motion to dismiss the state law claims will be denied.

B.  *The Title VII Claims*

The defendants' Title VII arguments require the Court to go beyond Arich's complaint and evaluate the substance of her EEOC charge of discrimination. The arguments will nevertheless be reviewed under the motion to dismiss standard.

> It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not go outside the complaint. There is one recognized exception to that

> rule: A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.

*Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (unpublished) (citations and quotation marks omitted). Here, because the charge of discrimination is referred to in Arich's complaint and is central to her claim, the motion will be considered as a motion to dismiss. *E.g.*, *Ivy v. Lane Furniture Indus., Inc.*, No. 1:08-cv-20, 2009 WL 1663439, *2 (N.D. Miss. June 15, 2009).

1. The Corporate Defendants

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." *Lowe v. American Eurocopter, LLC*, No. 1:10-cv-24, 2010 WL 5232523, *2 (N.D. Miss. Dec. 16, 2010) (quotation marks and citations omitted).

The Fifth Circuit "construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 272-75 (5th Cir. 2008) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455. 466 (5th Cir. 1970)). That Court has rejected the idea that a plaintiff "is irrevocably bound by the fact that she checked only" one box "when she executed her original charge of discrimination." *Sanchez*, 431 F.2d at 462. It reasoned that "a mere technical defect or omission" in the box-checking process was not dispositive, and "decline[d] to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one – not even the unschooled – should be boxed out." *Id.* at 462-63 (quotation marks omitted).

Instead, a court is to "begin with the obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein." *Id.* at 462. The proper scope of this review was thoroughly explained by Judge Aycock in *Lowe*:

> Courts are to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982); *see also Preston v. Tex. Dep't of Family and Protective Servs.*, 222 F.

App'x 353, 356 (5th Cir. 2007). To determine whether an allegation in a complaint falls within the scope of a charge filed with the EEOC, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). The Fifth Circuit has stated that courts "must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated." *Sanchez*, 431 F.2d at 463 (citation omitted)[.]

*Lowe*, 2010 WL 5232523, at *4 (additional citations omitted). A court can confirm its interpretation of the plaintiff's charge of discrimination by looking to "the actual scope of the EEOC's investigation, which is clearly pertinent to an exhaustion inquiry." *McClain*, 519 F.3d at 274.

Here, the factual statement in Arich's charge of discrimination recited that she "made a sexual harassment complaint and witnessed other females being sexual[ly] harassed by Ed Darling." Docket No. 14-1. It continued, "[t]here were four other females who complained to the Corporate Human Resources about the alleged harasser." *Id.* The defendants were plainly put on notice of a sexual harassment charge. An EEOC investigation into sex discrimination could reasonably be expected to follow from those allegations.[6] Arich's failure to check the "Sex" box was at most a mere technical defect or omission.[7]

Arich's charge of discrimination was sufficient to administratively exhaust her sex discrimination claim. That claim will not be dismissed for her failure to check the "Sex" box.

2. Ed Darling

---

[6] The EEOC's ultimate determination bolsters this conclusion. It acknowledged that Arich had alleged "that she was subjected to a hostile work environment and discharged after she reported complaints of sexual harassment against her male manager (Publisher)." Docket No. 26-1, at 3. Further, the EEOC ultimately found that:
> Respondent's Publisher subjected [Arich] to a sexually offensive, intimidating and hostile work environment. Like and related to that finding, the evidence establishes that a class of similarly situated female employees [was] subjected to this same sexually offensive, intimidating and hostile work environment. The evidence revealed that although Respondent has a written anti-discrimination policy, [it] did not take reasonable care to present this type of behavior from reoccurrence. Respondent wholly failed to correct the environment, or to penalize the harasser.

*Id.* at 4. The Court need not rely upon the EEOC's determination, though, given the clarity of Arich's factual statement in the charge of discrimination.

[7] Currently, there is nothing in the record which refutes Arich's explanation as to why the Retaliation box is the only one which was checked. *See* Docket No. 26-1. But the Court will wait until the summary judgment stage before conducting a full review of fact disputes.

7

"Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (citation omitted). Arich's response brief failed to show how she can sustain her Title VII claims against Darling. Darling's motion to dismiss the Title VII claims is well-taken and will be granted.

*III.    Conclusion*

Ed Darling's motion to dismiss [Docket No. 15] is granted in part and denied in part. The remaining motions [Docket Nos. 14; 19-20] are denied.

SO ORDERED, this the 5th day of June, 2012.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE